

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
                     :

In re                       : **Chapter 11**
                     :

**DALLAS STARS, L.P.,** *et al.*[1]   : **Case No. 11-12935 (PJW)**
                     :

    **Debtors.**              : **Jointly Administered**
                     :

---------------------------------------------------------------- x   Re: Docket Nos. 14, 15, 16, 122, 140, 141,
                                            159, 160, 165, 166 & 167

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**(I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT**
**TO SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE, (B) SOLICITATION**
**OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS, AND**
**(II) CONFIRMING THE DEBTORS' JOINT PREPACKAGED PLAN OF**
**REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Dallas Stars, L.P. ("Dallas Stars"), Dallas Arena LLC ("Dallas Arena"), Dallas

Stars U.S. Holdings Corp. ("U.S. Holdings"), and StarCenters LLC ("StarCenters"), as debtors

and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors"),

having jointly proposed and filed with the United States Bankruptcy Court for the District of

Delaware (the "Court") the Joint Prepackaged Plan of Reorganization of Dallas Stars, L.P., *et al.*

Under Chapter 11 of the Bankruptcy Code, dated as of September 1, 2011 [Docket No. 14], as

modified by the Modification to Joint Prepackaged Plan of Reorganization of Dallas Stars, L.P.,

*et al.* Under Chapter 11 of the Bankruptcy Code, dated September 1, 2011 [Docket No. 159]

(the "Prepackaged Plan"), a conformed copy of which is annexed hereto as Exhibit A; and that

certain supplement to the Prepackaged Plan, dated and filed with the Court on October 17, 2011

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number, are: Dallas Stars, L.P. (9450); Dallas Arena LLC (9999); Dallas Stars U.S. Holdings Corp. (0485), and StarCenters LLC (4430).

[Docket No. 122] (as the documents contained therein have been or may be further amended or supplemented, including as supplemented on November 10, 2011 [Docket No. 160], the "Prepackaged Plan Supplement"); the Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Dallas Stars, L.P., *et al.*, Under Chapter 11 of the Bankruptcy Code, dated September 15, 2011 (the "Disclosure Statement") [Docket No. 15]; and ballots for voting on the Prepackaged Plan, in the forms attached as Exhibit A (Classes 2A through 2D) and Exhibit B (Classes 3A through 3D) to the Declaration of Craig E. Johnson of the Garden City Group, Inc. Certifying the Forms of Ballots Used in the Solicitation of Votes on the Prepackaged Plan of Reorganization of Dallas Stars, L.P., *et al.* Under Chapter 11 of the Bankruptcy Code [Docket No. 167] (the "Johnson Supplemental Declaration"), having been duly transmitted to holders of Claims[2] in compliance with the procedures (the "Solicitation Procedures") set forth in the Declaration of Craig E. Johnson of the Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Results of Voting with Respect to the Joint Prepackaged Plan of Reorganization of Dallas Stars, L.P., *et al.* Under Chapter 11 of the Bankruptcy Code, sworn to by Craig E. Johnson of The Garden City Group, Inc. and filed with the Court on September 15, 2011 [Docket No. 16] (the "Voting Certification"); and the Court having entered an order (a) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets; (b) Approving the Proposed Buyers' Asset Purchase Agreement as a Stalking Horse Asset Purchase Agreement; (c) Approving Bid Protections; (d) Scheduling a Combined Hearing to Consider: (1) Approval of the Disclosure Statement, (2) Approval of the Solicitation Procedures and Forms of Ballots, (3) Confirmation of the Prepackaged Plan, and (4) Approval of the Sale; (e) Establishing a Deadline to Object to the Disclosure Statement, Sale and the

---

[2] Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Prepackaged Plan or the Bidding Procedures and Confirmation Scheduling Order.

Prepackaged Plan; (f) Approving the Form and Manner of Notice Thereof; and (g) Granting Any Related Relief (the "Bidding Procedures and Confirmation Scheduling Order") [Docket No. 83], which, among other things, scheduled the hearing to approve the Disclosure Statement for November 23, 2011 at 9:30 a.m., to be immediately followed by a hearing to consider confirmation of the Prepackaged Plan (the "Confirmation Hearing"); and the Confirmation Hearing subsequently having been rescheduled to November 18, 2011 at 9:30 a.m. pursuant to the Notice of Rescheduled Combined Hearing to (a) Approve Disclosure Statement, Prepetition Solicitation Procedures and Sale and (b) Confirm Prepackaged Plan [Docket No. 152]; and due notice of the Confirmation Hearings having been given to holders of Claims against and Equity Interests in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), the Bidding Procedures and Confirmation Scheduling Order, and the Solicitation Procedures, as established by the affidavits of service, mailing, and/or publication filed with the Court, including (1) Affidavit of Service of Melissa G. Melsher regarding Notice of (A) Commencement of Chapter 11 Cases, (B) Bidding Procedures, (C) Combined Hearing to Approve Disclosure Statement, Prepetition Solicitation Procedures, and Sale and to Confirm Prepackaged Plan, (D) Assumption and Assignment of Certain Executory Contracts, and (E) Establishment of Objection Deadline –and– Summary of Prepackaged Plan of Reorganization [Docket No. 101]; (2) Affidavit of Service of Tal Sapeika regarding Notice of (A) Commencement of Chapter 11 Cases, (B) Bidding Procedures, (C) Combined Hearing to Approve Disclosure Statement, Prepetition Solicitation Procedures, and Sale and to Confirm Prepackaged Plan, (D) Assumption and Assignment of Certain Executory Contracts, and (E) Establishment of Objection Deadline –and– Summary of Prepackaged Plan of Reorganization [Docket No. 139]; and (3) Affidavit of Service of Tal

3

Sapeika regarding Notice of (A) Commencement of Chapter 11 Cases, (B) Bidding Procedures, (C) Combined Hearing to Approve Disclosure Statement, Prepetition Solicitation Procedures, and Sale and to Confirm Prepackaged Plan, (D) Assumption and Assignment of Certain Executory Contracts, and (E) Establishment of Objection Deadline –and– Summary of Prepackaged Plan of Reorganization [Docket No. 145]; and (4) the Affidavit of Melissa G. Melsher regarding publication in *The Wall Street Journal*, *National Edition* and *The Dallas Morning News* of the Summary and Notice, dated October 6, 2011 [Docket No. 105] (the "Notice Affidavits"), and such notice being sufficient under the circumstances and no further notice being required; and due notice of the Prepackaged Plan Supplement is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures and the Local Rules and no other or further notice is or shall be required; and based upon and after full consideration of the entire record of the Confirmation Hearings, including (A) the Disclosure Statement, the Prepackaged Plan and the Voting Certification, (B) the Debtors' Memorandum of Law in Support of the Debtors' Request for an Order (I) Approving the Debtors' (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures, and (C) Forms of Ballots, and (II) Approving the Sale and Confirming the Joint Prepackaged Plan of Reorganization of Dallas Stars, L.P., *et al.* Under Chapter 11 of the Bankruptcy Code, dated November 14, 2011 [Docket No. 165] (the "Confirmation Memorandum"), and (C) the Declaration of Robert L. Hutson in Support of Debtors' Request for an Order (I) Approving the Debtors' (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures, and (C) Forms of Ballots, and (II) Approving the Sale and Confirming the Joint Prepackaged Plan of Reorganization of Dallas Stars, L.P., *et al.* Under

4

Chapter 11 of the Bankruptcy Code, dated November 14, 2011 (the "Hutson Supplemental Declaration") [Docket No. 166]; objections, if any, to the approval of the Disclosure Statement or confirmation of the Prepackaged Plan all being withdrawn or overruled; and the Court being familiar with the Disclosure Statement and the Prepackaged Plan and other relevant factors affecting the Debtors' Chapter 11 Cases; and the Court being familiar with, and having taken judicial notice of, the entire record of the Debtors' Chapter 11 Cases; and upon the arguments of counsel and the evidence proffered and adduced at the Confirmation Hearings; and the Court having found and determined that the Disclosure Statement should be approved and the Prepackaged Plan should be confirmed as reflected by the Court's rulings made herein and at the Confirmation Hearings; and after due deliberation and sufficient cause appearing therefor; the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Prepackaged Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.

5

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C. **Chapter 11 Petitions.** On September 15, 2011 (the "Commencement Date"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code. Further, in accordance with an order of this Court, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

D. **Judicial Notice.** The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

E. **Burden of Proof.** The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden.

F. **Adequacy of Disclosure Statement.** The Disclosure Statement (a) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepackaged Plan, and the transactions contemplated therein, and (b) is approved in all respects.

6

G.     Voting.  As evidenced by the Voting Certification, votes to accept or reject the Prepackaged Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and applicable nonbankruptcy law.

H.     Solicitation.  Prior to the Commencement Date, the Prepackaged Plan, the Disclosure Statement, and the Ballots, and, subsequent to the Commencement Date, notice of the Confirmation Hearings, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Bidding Procedures and Confirmation Scheduling Order.  The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Classes 2A through 2D (First Lien Secured Claims) and Classes 3A through 3D (Second Lien Secured Claims) – the Classes of Claims entitled to vote to accept or reject the Prepackaged Plan.  The period during which the Debtors solicited acceptances to the Prepackaged Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Prepackaged Plan.  The Debtors were not required to solicit votes from the holders of Classes 1A through 1D (Priority Non-Tax Claims), Class 4A (CFV Claim), Classes 5A through 5D (Secured Claims), Classes 6A through 6D (Other Secured Claims), and Classes 7A through 7D (Assumed General Unsecured Claims), as each such class is unimpaired under the Prepackaged Plan and is deemed to accept the Prepackaged Plan.  The Debtors also were not required to solicit votes from the holders of Classes 8A through 8D (Non-Assumed General Unsecured Claims) and Classes 9A through 9D (Equity Interests in Debtors), as each such Class receives no recovery under the Prepackaged Plan and is deemed to reject the Prepackaged Plan.  As described in and as evidenced by the

7

Voting Certification and the Notice Affidavits, the transmittal and service of the Prepackaged

Plan, the Disclosure Statement, the Ballots, the notice of the Confirmation Hearings, and the

publication of such notice of the Confirmation Hearings (all of the foregoing, the "Solicitation")

were timely, adequate, and sufficient under the circumstances. The Solicitation of votes on the

Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory

based upon the circumstances of these Chapter 11 Cases, was conducted in good faith, and was

in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local

Rules, and any other applicable rules, laws and regulations. The Debtors (including the Post-

Effective Date Debtors), the holders of First Lien Secured Claims, the First Lien Administrative

Agent, the holders of Second Lien Secured Claims, the Second Lien Administrative Agent, the

NHL, CFV I LLC, the Purchaser, and their respective successors, predecessors, control persons,

members, officers, directors, employees, and agents and their respective attorneys, financial

advisors, investment bankers, accountants, and other professionals retained by such persons, the

Post-Effective Date Debtors, and any and all affiliates, members, managers, shareholders,

partners, employees, attorneys, and advisors of the foregoing are entitled to the protection of

section 1125(e) of the Bankruptcy Code.

        I.     Notice. As is evidenced by the Voting Certification and the Notice

Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, and the

Ballots were adequate and sufficient under the circumstances, and all parties required to be given

notice of the Confirmation Hearings (including the deadline for filing and serving objections to

confirmation of the Prepackaged Plan) have been given due, proper, timely, and adequate notice

in accordance with the Bidding Procedures and Confirmation Scheduling Order and in

compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and

8

applicable nonbankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

J. <u>Prepackaged Plan Supplement</u>. On October 17, 2011 the Debtors filed the Prepackaged Plan Supplement, which includes, among other things, drafts of Amended Corporate Organization Documents. On November 11, 2011, the Debtors filed the Second Prepackaged Plan Supplement in Support of the Debtors' Joint Prepackaged Plan of Reorganization [Docket No. 160] (the "<u>Second Plan Supplement</u>") to (a) provide notice, pursuant to section 9.17 of the Asset Purchase Agreement, that 100% of the membership interests in Plano StarCenter, LLC will be treated as an Excluded Asset under the Asset Purchase Agreement and (b) identify Alan M. Jacobs as the Officer of the Post-Effective Date Debtors under sections 1.74 and 6.2(c) of the Prepackaged Plan.

K. <u>Modifications of the Prepackaged Plan</u>. On November 11, 2011, the Debtors filed the Modification to the Joint Prepackaged Plan of Reorganization of Dallas Stars, L.P., *et al*. Under Chapter 11 of the Bankruptcy Code [Docket No. 159] to effect a non-material clarification to the definition of "Released Parties" under section 1.88 of the Prepackaged Plan. Modifications made to the Prepackaged Plan since the Solicitation (a) complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and (b) do not require re-solicitation of votes with respect to the Prepackaged Plan. Adequate and sufficient notice of such modifications has been given, no further notice is or shall be required and such modifications are approved in full, and the votes cast to accept the Prepackaged Plan are deemed to have been cast with respect to the Prepackaged Plan as so modified.

**The Sale Process**

L. The Court held the hearing to consider the Bidding Procedures and Confirmation Scheduling Order and established (i) the Bid Deadline for any Qualified Bidder (as

RLF1 5595295v. 1

defined in the Bidding Procedures and Confirmation Scheduling Order) wishing to participate in

the Auction to submit a Qualified Bid (as defined in the Bidding Procedures and Confirmation

Scheduling Order) and (ii) the date and time for the Auction. As Dallas Sports & Entertainment,

L.P., DSE Hockey Club L.P., and DSE Hockey Centers L.P. (collectively, the "Stalking Horse")

were determined to be a Qualified Bidder pursuant to the approved Bidding Procedures and

submitted the only Qualified Bid that was received by the Bid Deadline, pursuant to the

approved Bidding Procedures, the Debtors did not hold an Auction and thus the Stalking Horse is

the Successful Bidder.

M.     "Purchaser" as used in this Order shall mean the Stalking Horse, if the

Stalking Horse closes the transaction to acquire the Dallas Stars.

N.     Asset Purchase Agreement. The Asset Purchase Agreement constitutes

the highest or best offer for the Debtors' assets. The Debtors' determination that the Asset

Purchase Agreement is the highest or best offer for the Debtors' assets constitutes a valid and

sound exercise of the Debtors' business judgment. The Asset Purchase Agreement and all

transactions, agreements, and documents related thereto are essential elements of the

Prepackaged Plan and entry into and consummation of the Asset Purchase Agreement is in the

best interest of the Debtors and their estates. The Debtors and the Purchaser have acted in good

faith in connection with the Prepackaged Plan, these Chapter 11 Cases, and the formulation and

confirmation of the Prepackaged Plan. Moreover, the Asset Purchase Agreement was

negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in

good faith, and from arm's length bargaining positions. Except as otherwise disclosed to the

Court, neither the Purchaser, nor any of its affiliates or their respective representatives is an

"insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

Neither the Debtors, nor the Purchaser, nor any of their respective agents or representatives have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code had the purchase of the Debtors' assets been conducted pursuant to section 363 of the Bankruptcy Code, or other applicable law. Specifically, neither the Purchaser nor any of its representatives have acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. The terms and conditions of the Asset Purchase Agreement and the transactions contemplated thereby (including, without limitation. the consideration provided in respect thereof) are fair and reasonable and shall not be avoided under the Bankruptcy Code or other applicable law.

O.    Good Faith of the Purchaser. The Purchaser is, in all respects, a good faith purchaser of the Purchased Assets purchased pursuant to the Asset Purchase Agreement and is, therefore, entitled to all of the protections afforded thereby, including the protections of section 363(m) of the Bankruptcy Code to the fullest extent possible. The Purchaser acquired all rights in the Purchased Assets in good faith reliance on the Confirmation Order, including, without limitation, the portions thereof relating to the transfer of the Debtors' assets free and clear of any and all interests, except as set forth in the Asset Purchase Agreement.

P.    Fair Consideration. The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement constitutes reasonably equivalent value or fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, and the laws of the United States, any state, territory, possession thereof, or the District of Columbia. The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code and/or under the laws of the United States, any state, territory, possession thereof, or the District of

Columbia. Neither the Debtors nor the Purchaser entered into the transactions contemplated by the Asset Purchase Agreement fraudulently for the purpose of such statutory and common law fraudulent conveyance and fraudulent transfer claims. The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Debtors' assets under the circumstances of these Chapter 11 Cases. Based on the record at the Confirmation Hearing, no other person or entity or group of entities, other than the Purchaser, has offered to purchase the Debtors' assets on terms that would give greater economic value to the Debtors' estates. Approval of the Asset Purchase Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, and all other parties in interest.

Q. <u>Stalking Horse Senior Secured Credit Agreement</u>. The Stalking Horse Senior Secured Credit Agreement and the other Loan Documents (as defined therein) (collectively, the "<u>Stalking Horse Senior Secured Credit Facility</u>") have been negotiated in good faith and on an arms' length basis and each party thereto may rely upon the provisions of this Order in closing the Stalking Horse Senior Secured Credit Facility. The financial accommodations to be extended pursuant to the Stalking Horse Senior Secured Credit Facility are being extended in good faith, for legitimate business reasons, are reasonable, and shall not be subject to recharacterization for any purpose whatsoever, and shall not constitute preferences or fraudulent transfers under the Bankruptcy Code or any other applicable nonbankruptcy law.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

R. <u>Prepackaged Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Prepackaged Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Prepackaged Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to Administrative Expense Claims, Professional Compensation and Reimbursement Claims, and Priority Tax Claims, which need not be classified, Articles III and IV of the Prepackaged Plan classify thirty three Classes of Claims and Equity Interests.  The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Prepackaged Plan.  The Prepackaged Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Articles III, IV and V of the Prepackaged Plan specify that Classes 1A through 1D (Priority Non-Tax Claims), Class 4A (CFV Claim), Classes 5A through 5D (Secured Tax Claims), Classes 6A through 6D (Other Secured Claims), and Classes 7A through 7D (Assumed General Unsecured Claims), are unimpaired under the Prepackaged Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Articles III, IV and V of the Prepackaged Plan designate Classes 2A through 2D (First Lien Secured Claims), Classes 3A through 3D (Second Lien Secured Claims), Classes 8A through 8D (Non-Assumed General Unsecured Claims), and Classes 9A through 9D (Equity Interests in Debtors) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

RLF1 5595295v. 1

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)).  The Prepackaged Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to or elected a less favorable or different treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of the Prepackaged Plan (11 U.S.C. § 1123(a)(5)).  The Prepackaged Plan and the various documents and agreements set forth in the Prepackaged Plan Supplement provides adequate and proper means for the implementation of the Prepackaged Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including (i) the continued corporate existence of the Debtors, (ii) the process for designation of the Officer of the Post-Effective Date Debtors, (iii) consummation of the transactions contemplated by the Asset Purchase Agreement (including the assumption by the Debtors of executory contracts and unexpired leases, and assignment of such contracts and leases to the Purchaser) and by the Stalking Horse Senior Secured Credit Agreement, (iv) the cancellation of certain liens, (v) the vesting of the assets of the Debtors' estates in the Post-Effective Date Debtors, (vi) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents related to the foregoing, and (vii) provisions for the dissolution, consolidation, or other termination of legal existence of the Post-Effective Date Debtors.

(f)     Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).  The Amended Corporate Organizational Documents of each of the Debtors that is a corporation, as set forth in the Prepackaged Plan Supplement, and the corporate organizational documents of any Purchaser that is a corporation (the entity to which properties of the estates are being transferred under the Prepackaged Plan under section 1123(a)(5)(B) of the Bankruptcy

14

Code), include a provision prohibiting the issuance of nonvoting equity securities and provide, as to the several classes of securities possessing voting power, when there are multiple classes, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

(g) Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). Section 6.2(c) of Article VI of the Prepackaged Plan contain provisions with respect to the manner of appointment of the Officer for the Post-Effective Date Debtors that is consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(h) Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)). Pursuant to Article III, IV, and V of the Prepackaged Plan, (a) Classes 1A through 1D (Priority Non-Tax Claims), Class 4A (CFV Claim), Classes 5A through 5D (Secured Tax Claims), Classes 6A through 6D (Other Secured Claims), and Classes 7A through 7D (Assumed General Unsecured Claims) are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code, and (b) Classes 2A through 2D (First Lien Secured Claims), Classes 3A through 3D (Second Lien Secured Claims), Classes 8A through 8D (Non-Assumed General Unsecured Claims), and Classes 9A through 9D (Equity Interests in Debtors) are impaired.

(i) Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article IX of the Prepackaged Plan addresses the assumption and rejection of executory contracts and unexpired leases, and meets the requirements of section 365(b) of the Bankruptcy Code. There have been

15

no objections to the Debtors' assumption of executory contracts and unexpired leases pursuant to Article IX of the Prepackaged Plan.

(j)     Settlement, Adjustment and Retention of Claims and Interests (11 U.S.C. § 1123(b)(3)(A) and 1123(b)(3)(B)).  Section 11.7 of the Prepackaged Plan provides that on the Effective Date, the Debtors shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors and/or which the Debtors could have prosecuted as debtors or debtors in possession. Thus, the Prepackaged Plan complies with sections 1123(b)(3)(A) and 1123(b)(3)(B) of the Bankruptcy Code.

(k)     Sale of Substantially All Assets (11 U.S.C. § 1123(b)(4)).  The Prepackaged Plan provides for the Sale on the Effective Date of substantially all of the assets of the Debtors.  As a result of the Sale and in accordance with the terms of the Prepackaged Plan, all holders of Allowed Administrative Expense Claims, the CFV Claim and Allowed Assumed General Unsecured Claims against the Debtors will receive payment in full of their allowed claims.  In addition, all holders of First Lien Secured Claims and, because each of Classes 3A-3D voted to accept the Prepackaged Plan, all holders of Second Lien Secured Claims will receive distributions from the Sale.  Thus, the Prepackaged Plan complies with section 1123(b)(4) of the Bankruptcy Code.

(l)     Unaffected Rights of Holders of Classes of Claims (11 U.S.C. § 1123(b)(5)).  The Prepackaged Plan leaves unaffected the rights of holders of Claims in Classes 1A through 1D (Priority Non-Tax Claims), Class 4A (CFV Claim), Classes 5A through 5D (Secured Tax Claims), Classes 6A through 6D (Other Secured Claims), and Classes 7A

16

through 7D (Assumed General Unsecured Claims). Thus, the Prepackaged Plan complies with section 1123(b)(5) of the Bankruptcy Code.

(m)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). The provisions of the Prepackaged Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(n)    Debtors Are Not Individuals (11 U.S.C. § 1123(c)). The Debtors are not individuals, and accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

(o)    Cure of Defaults (11 U.S.C. § 1123(d)). Sections 9.1 and 9.2 of the Prepackaged Plan provide that the Purchaser will promptly pay the cure amount as to each executory contract or unexpired lease to be assumed or assumed and assigned by the Debtors under the Prepackaged Plan, and provide each contract counterparty an opportunity to object to and be heard by the Court with respect to such proposed cure amount. If there is a dispute regarding (i) the nature or amount of any Cure; (ii) the ability of the Purchaser to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption and assignment, Cure shall occur within seven days following the entry of a Final Order of the Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be. Thus, the Prepackaged Plan complies with section 1123(d) of the Bankruptcy Code.

S.    The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically:

(a)     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code; and

(b)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and in transmitting the Prepackaged Plan, the Prepackaged Plan Supplement, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Prepackaged Plan, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Bidding Procedures and Confirmation Scheduling Order, and all other applicable law.

T.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Prepackaged Plan (and all related documents, including the Asset Purchase Agreement) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors proposed the Prepackaged Plan with the honest purpose of selling substantially all of the assets of the Debtors and expeditiously distributing value to creditors, and they have thus met their good faith obligations under section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearings and other proceedings held in these Chapter 11 Cases.  The Prepackaged Plan (including the Asset Purchase Agreement, the Stalking Horse Senior Secured Credit Agreement, and all other documents necessary to effectuate the Prepackaged Plan) were negotiated at arms' length among representatives of the Debtors, holders of First Lien Secured Claims, the First Lien Administrative Agent, holders of Second Lien Secured Claims, the Second Lien Administrative Agent, NHL, CFV I LLC, the Purchaser, and their respective professionals. Each of the Debtors,

18

holders of First Lien Secured Claims, the First Lien Administrative Agent, the holders of Second

Lien Secured Claims, the Second Lien Administrative Agent, NHL, CFV I LLC, and the

Purchaser supports the Sale of the Purchased Assets to the Purchaser and confirmation of the

Prepackaged Plan. Further, the Prepackaged Plan's classification, indemnification, exculpation,

release, and injunction provisions have been negotiated in good faith and at arms' length, are

consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy

Code, and are necessary to the proposed reorganization and the implementation of the

Prepackaged Plan.

        U.     <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.
Any payment made or to be made by the Debtors for services or for costs and expenses of the

Debtors' professionals in connection with their Chapter 11 Cases, or in connection with the

Prepackaged Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to

the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy

Code.

        V.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors
have complied with section 1129(a)(5) of the Bankruptcy Code. The Debtors have identified

Alan M. Jacobs as the individual who will serve as sole officer of the Post-Effective Date

Debtors pursuant to section 6.2(c) of the Prepackaged Plan.

        W.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Prepackaged Plan does
not provide for rate changes by any of the Post-Effective Date Debtors. Thus, section 1129(a)(6)

of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

        X.     <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Prepackaged Plan
satisfies section 1129(a)(7) of the Bankruptcy Code. The Debtors entered into the Asset

Purchase Agreement after an intensive marketing process, both prepetition and postpetition, that ensured that they received the highest value possible for their assets under the circumstances. In a chapter 7 liquidation, the Debtors would not receive more value for their assets, the chapter 7 stigma could disrupt the Debtors' businesses and affect their value, and there would be substantial costs of liquidation. As such, under the Prepackaged Plan, each holder of a Claim or Equity Interest will receive not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

Y.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Classes 1A through 1D (Priority Non-Tax Claims), Class 4A (CFV Claim), Classes 5A through 5D (Secured Tax Claims), Classes 6A through 6D (Other Secured Claims), and Classes 7A through 7D (Assumed General Unsecured Claims) are Classes of unimpaired Claims that are conclusively presumed to have accepted the Prepackaged Plan in accordance with section 1126(f) of the Bankruptcy Code. Classes 8A and through 8D (Non-Assumed General Unsecured Claims), and Classes 9A through 9D (Equity Interests in Debtors) are impaired, will not retain property or receive a distribution under the Prepackaged Plan, and are deemed to reject the Prepackaged Plan. Classes 2A through 2D (First Lien Secured Claims) and Classes 3A through 3D (Second Lien Secured Claims) have voted to accept the Prepackaged Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtors. Accordingly, the Prepackaged Plan does not comply with section 1129(a)(8) of the Bankruptcy Code.

Z.    Treatment of Administrative Expense Claims, Professional Compensation and Reimbursement Claims, and Priority Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Allowed Administrative Expense Claims pursuant to section 2.1 of the Prepackaged Plan

20

satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of

Priority Non-Tax Claims pursuant to section 4.1 of the Prepackaged Plan satisfies the

requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax

Claims pursuant to section 2.3 of the Prepackaged Plan satisfies the requirements of section

1129(a)(9)(C) of the Bankruptcy Code.

AA.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Classes 2A

through 2D (First Lien Secured Claims) and Classes 3A through 3D (Second Lien Secured

Claims) voted to accept the Prepackaged Plan by the requisite majorities, determined without

including any acceptance of the Prepackaged Plan by any insider, thereby satisfying the

requirements of section 1129(a)(10) of the Bankruptcy Code.

BB.    Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure

Statement, the Hutson Supplemental Declaration, and the evidence proffered or adduced at the

Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other

evidence, and (iii) establishes that the Prepackaged Plan is feasible because, in the context of the

Prepackaged Plan where there will be no ongoing business for the Post-Effective Date Debtors,

the Post-Effective Date Debtors have the ability to satisfy the conditions precedent to the

Effective Date and otherwise have sufficient funds from the Post-Closing Expense Amount to

meet their post-confirmation obligations to pay for the costs of administering and fully

consummating the Prepackaged Plan, thereby satisfying the requirements of section 1129(a)(11)

of the Bankruptcy Code.

CC.    Payment of Fees (11 U.S.C. § 1129(a)(12)). Notwithstanding anything in

the Prepackaged Plan to the contrary, all fees payable under section 1930 of title 28, United

States Code, as determined by the Bankruptcy Court at a hearing, if necessary, shall be paid for

21

each quarter (including any fraction thereof) until the Debtors' Chapter 11 Cases are converted, dismissed, or a final decree is entered, whichever occurs first.

DD.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 9.4 of the Prepackaged Plan provides that except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and benefit plans of the Debtors, including benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Commencement Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Prepackaged Plan and assigned to the Purchaser under the Asset Purchase Agreement.  The Prepackaged Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

EE.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

FF.     Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

GG.     No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  The Debtors are each a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

RLF1 5595295v. 1

HH.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).

Classes 8A through 8D (Non-Assumed General Unsecured Claims) and Classes 9A through 9D

(Equity Interests in Debtors) are deemed to have rejected the Prepackaged Plan.  Based upon the

evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, the

Prepackaged Plan does not discriminate unfairly against, and is fair and equitable with respect to,

these Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no

holder of any claim or interest that is junior to such Classes will receive or retain any property

under the Prepackaged Plan on account of such junior claim or interest, and no holder of a Claim

in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim

or such Claim's treatment is a result of a valid subordination agreement under section 510(a) of

the Bankruptcy Code.  Moreover, to the extent there are any Non-Assumed General Unsecured

Claims, other than Intercompany Claims and claims with certain affiliates arising out of certain

executory contracts, there is no unfair discrimination, as the unsecured claims that are receiving a

recovery are doing so at the election of the Purchaser based upon the Purchaser's determination

as to which Claims to pay.  Thus, the Prepackaged Plan may be confirmed notwithstanding the

deemed rejection of the Prepackaged Plan by these Classes and non-compliance with section

1129(a)(8) of the Bankruptcy Code.

II.    Only One Plan (11 U.S.C. § 1129(c)).  The Prepackaged Plan is the only

plan filed in each of these cases, and accordingly, section 1129(c) of the Bankruptcy Code is

inapplicable in these Chapter 11 Cases.

JJ.    Principal Purpose of the Prepackaged Plan (11 U.S.C. § 1129(d)).  The

principal purpose of the Prepackaged Plan is not the avoidance of taxes or the avoidance of the

application of section 5 of the United States Securities Act of 1933, as amended and no

governmental entity has objected to the confirmation of the Prepackaged Plan on any such grounds. The Prepackaged Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

KK. <u>Debtors are Not a Small Business (11 U.S.C. § 1129(e))</u>. The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

LL. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in these Chapter 11 Cases, including evidence presented at the Confirmation Hearings, the Debtors (including the Post-Effective Date Debtors), the holders of First Lien Secured Claims, the First Lien Administrative Agent, the holders of Second Lien Secured Claims, the Second Lien Administrative Agent, the NHL, CFV I LLC, the Purchaser, and their respective successors, predecessors, control persons, members, officers, directors, employees and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Prepackaged Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Prepackaged Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of

24

acceptances or rejections of the Prepackaged Plan or the offer and issuance of the securities under the Prepackaged Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation and release provisions set forth in Article XI of the Prepackaged Plan.

MM.     Satisfaction of Confirmation Requirements.  Based upon the foregoing, the Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

NN.     Implementation.  All documents necessary to implement the Prepackaged Plan, including those contained in the Prepackaged Plan Supplement and the Stalking Horse Senior Secured Credit Facility, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

OO.     Injunction, Exculpation, and Releases.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation and releases set forth in Article XI of the Prepackaged Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the unopposed releases set forth in Article XI of the Prepackaged Plan if, as has been established here based upon the record in these Chapter 11 Cases and the evidence presented at the Confirmation Hearings, such provisions (i) were integral to the agreement among the various parties in interest and are essential to the formulation and implementation of the Prepackaged Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtors, their estates, and

25

parties in interest. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Prepackaged Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the Debtors, the Post-Effective Date Debtors and their estates, creditors and equity holders. The releases of non-Debtors under the Prepackaged Plan are fair and are necessary to the proposed reorganization and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties receiving such releases. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpation, and injunction provided for in Article XI of the Prepackaged Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, exculpation, and releases set forth in Article XI of the Prepackaged Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, exculpation and releases would seriously impair the Debtors' ability to confirm the Prepackaged Plan.

PP. <u>Settlement</u>. Except as otherwise provided in the Prepackaged Plan and this Order, the Prepackaged Plan represents a settlement among the Debtors and their creditors and equity holders of all Claims, Equity Interests and litigation against the Debtors, pending or threatened, or that was or could have been commenced against the Debtors prior to the date of entry of this Order.

QQ. <u>Good Faith</u>. The Debtors, the Purchaser, the holders of First Lien Secured Claims, the First Lien Administrative Agent, the holders of Second Lien Secured Claims, the Second Lien Administrative Agent, the NHL, CFV I LLC, and their respective successors, predecessors, control persons, members, affiliates, officers, directors, employees, and agents and

26

their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons will be acting in good faith if they proceed to (i) consummate the Prepackaged Plan and the agreements, settlements, transactions, and transfers contemplated thereby (ii) take the actions authorized or directed by this Order and (iii) execute and consummate the Stalking Horse Senior Secured Credit Facility.

RR.     Valuation.  Based on the Qualified Bids received as a result of the Bidding Procedures and the Auction, if any, the value of the Debtors is insufficient to support a distribution to holders of Second Lien Secured Claims, Non-Assumed General Unsecured Claims, and Equity Interests in Debtors under absolute priority principles.

SS.     Retention of Jurisdiction.  The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XII of the Prepackaged Plan and section 1142 of the Bankruptcy Code.  For the avoidance of doubt, the Bankruptcy Court shall not retain jurisdiction to hear and determine disputes arising under or in connection with the Stalking Horse Senior Secured Credit Agreement, NHL Agreements, and NHL/Lender Cooperation Agreement.

### The Prepackaged Plan Satisfies Confirmation Requirements

TT.     Based upon the foregoing, the Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

### ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.     Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule

27

7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2. _Notice of the Confirmation Hearings_. Notice of the Confirmation Hearings complied with the terms of the Bidding Procedures and Confirmation Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3. _Solicitation_. The solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable nonbankruptcy law.

4. _Ballots_. The forms of Ballots annexed to the Johnson Supplemental Declaration are in compliance with Bankruptcy Rule 3018(c), substantially conform to Official Form Number 14, and are approved in all respects.

5. _Plan Modifications_. Modifications made to the Prepackaged Plan following the solicitation of votes thereon satisfied the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, there have been no Lender Adverse Modifications without the consent of the First Lien Administrative Agent acting in its reasonable discretion, and no further solicitation is required.

6. _The Disclosure Statement_. The Disclosure Statement (i) contains adequate information of a kind generally consistent with the disclosure requirements of applicable nonbankruptcy law, (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors,

the Prepackaged Plan, and the transactions contemplated therein, and (iii) is approved in all respects.

       7.      <u>Confirmation of the Prepackaged Plan</u>. The Prepackaged Plan and each of their provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code. The documents contained in the Prepackaged Plan Supplement are authorized and approved. The terms of the Prepackaged Plan, including the Prepackaged Plan Supplement, are incorporated by reference into and are an integral part of this Order.

       8.      <u>Objections</u>. All Objections, responses to, and statements and comments, if any, in opposition to, the Prepackaged Plan and/or the Disclosure Statement, respectively, other than those specifically reserved, resolved, or withdrawn in their entirety prior to, or on the record at, the Confirmation Hearings, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

       9.      <u>No Action</u>. Pursuant to section 1142(b) of the Bankruptcy Code, no action of the respective officers, directors, or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Prepackaged Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Prepackaged Plan.

       10.     <u>Binding Effect</u>. Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, on or after entry of this Order and subject to the occurrence of the Effective Date, the provisions of the Prepackaged Plan (including the exhibits and schedules thereto and all documents and agreements executed pursuant thereto or in connection therewith, including those contained in the Prepackaged Plan Supplement) and this Order shall

RLF1 5595295v. 1

bind the Debtors, the Post-Effective Date Debtors, all holders of Claims and Equity Interests of the Debtors (irrespective of whether such Claims or Equity Interests are impaired under the Prepackaged Plan or whether the holders of such Claims or Equity Interests accepted or are deemed to have accepted the Prepackaged Plan), each Person receiving, retaining or otherwise acquiring property under the Prepackaged Plan, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any Person making an appearance in the Chapter 11 Cases, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

11. [RESERVED]

12. <u>Free and Clear</u>. Except as otherwise provided in the Prepackaged Plan and as contemplated under the Asset Purchase Agreement, the Debtors, as Post-Effective Date Debtors, shall continue to exist on and after the Effective Date as separate Persons with all of the powers available to such legal entities under applicable law, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with applicable law and the Prepackaged Plan. Except as otherwise provided in the Prepackaged Plan, the property of the Debtors' estates that is not specifically disposed of pursuant to the Prepackaged Plan or purchased by the Purchaser under the Asset Purchase Agreement, if any, shall vest in the Post-Effective Date Debtors on the Effective Date. Except as otherwise provided in the Prepackaged Plan, the Post-Effective Date Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Court. As of the Effective Date, all property of the Post-Effective Date Debtors not sold to the Purchaser, if any, shall be free and clear of all Claims, encumbrances, charges, and Liens except as specifically provided in the Prepackaged Plan or the Confirmation Order;

RLF1 5595295v. 1

*provided, however,* that any valid, perfected prepetition liens against the Debtors' assets shall attach to the assets remaining in the possession of the Post-Effective Date Debtors following the Effective Date and the proceeds thereof with the same force and effect, priority, and validity as existed with respect to the Debtors' assets and proceeds thereof prior to the Effective Date, and the Intercreditor Agreement shall continue to be of full force and effect with respect to such assets. Without limiting the generality of the foregoing, the Post-Effective Date Debtors may, without application to or approval by the Court, pay professional fees and expenses incurred by the Post-Effective Date Debtors after the Confirmation Date. Notwithstanding anything to the contrary herein, the Post-Effective Date Debtors shall remain bound by the terms of the confirmed Prepackaged Plan and Confirmation Order.

13. <u>Valid Transfer.</u> On the Effective Date, the Debtors are authorized to enter into the Asset Purchase Agreement and any related agreements and take all actions necessary to effectuate the Asset Purchase Agreement and any related agreements. Prior to the transfer of the Purchased Assets to the Purchaser under the Asset Purchase Agreement on or after the Effective Date, the Debtors are and were the sole and lawful owner of such assets. Except as otherwise provided herein, in the Prepackaged Plan or in the Stalking Horse Senior Secured Credit Facility, as contemplated under the Asset Purchase Agreement and subject to the satisfaction of the conditions precedent to the Effective Date, the transfer of the Purchased Assets to the Purchaser under the Asset Purchase Agreement on or after the Effective Date shall be a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens, claims (as defined in section 101(5) of the Bankruptcy Code, and including, without limitation, successor liability claims), encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions,

31

contractual commitments, rights of first refusal, or interests of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Released Liens"), including, but not limited to, (i) those that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Purchased Assets, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the closing of the Sale, (iii) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including without limitation any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, and (iv) those arising in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors, affiliates, or representatives, including, but not limited to, Released Liens arising under any bulk-transfer laws, doctrines of successor liability or similar theories. For the further avoidance of doubt, and without limiting the effect of any of the foregoing, except as otherwise provided in the Prepackaged Plan or as contemplated under the Asset Purchase Agreement, the transfer, assumption and assignment, of any of the executory contracts shall be free and clear of all Released Liens.

14. <u>Good Faith Purchaser</u>. The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal

32

of the authorization provided herein shall not affect the validity of the transfer of the Purchased Assets to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

15.    No Successor Liability. Except as otherwise provided herein, in the Prepackaged Plan, or the Stalking Horse Senior Secured Credit Facility or as contemplated under the Asset Purchase Agreement, the transfer of the Purchased Assets to the Purchaser under the Asset Purchase Agreement shall not result in the Purchaser having any liability or responsibility (i) for any Claim against the Debtors or against an insider of the Debtors, (ii) to the Debtors or to third parties, or (iii) for the satisfaction in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, of any Released Liens. Without limiting the effect or scope of the foregoing, to the fullest extent permitted by law, except as otherwise provided in the Prepackaged Plan or as contemplated under the Asset Purchase Agreement, the transfer of the Purchased Assets from the Debtors to the Purchaser shall not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Purchased Assets) to any liability for Released Liens against the Debtors in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory, or possession thereof, or the District of Columbia, applicable to such transactions, including, without limitation, any bulk-transfer laws, successor liability, or similar theories. For the avoidance of doubt, and without limiting the effect and/or generality of any of the foregoing, except as otherwise provided herein, in the Prepackaged Plan or the Stalking Horse Senior Secured Credit Facility, or as contemplated under the Asset Purchase Agreement, the transfer,

RLFI 5595295v. 1

assumption, and assignment of any of the executory contracts are free and clear of all Released Liens.

16. <u>No Liability Findings Needed by Purchaser</u>. The Purchaser would not have entered into the Asset Purchase Agreement and would not have consummated the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Purchased Assets to the Purchaser, and the assumption and assignment or transfer of the executory contracts, was not free and clear of all Released Liens of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Released Liens, in each case except as otherwise provided herein, in the Prepackaged Plan, the Stalking Horse Senior Secured Credit Facility, or as contemplated under the Asset Purchase Agreement.

17. <u>Implementation of the Asset Purchase Agreement and Prepackaged Plan</u>. On or (as applicable) prior to the Effective Date, the Debtors and the Post-Effective Date Debtors, as applicable, will be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated by the Asset Purchase Agreement or the Prepackaged Plan, including those contained in the Prepackaged Plan Supplement, (or necessary or desirable to effect the transactions contemplated by the Asset Purchase Agreement or the Prepackaged Plan) in the name of and on behalf of the Post-Effective Date Debtors, including, without limitation, any and all agreements, documents, and instruments related to the foregoing. Such authorizations and approvals will be effective notwithstanding any requirements under non-bankruptcy law.

18. <u>Stalking Horse Senior Secured Credit Facility</u>. Upon the occurrence of the Effective Date, the First Lien Administrative Agent shall be granted valid, perfected first priority liens on and security interests in all of the Purchased Assets (other than any Purchased Assets

34

that are specifically excluded from the Collateral (as defined in the Stalking Horse Senior Secured Credit Agreement) pursuant to the terms of the Stalking Horse Senior Secured Credit Facility), for the benefit of the holders of First Lien Secured Claims pursuant to the Stalking Horse Senior Secured Credit Facility and the Purchaser shall be bound by the Stalking Horse Senior Secured Credit Facility in accordance with its terms. Upon the occurrence of the Effective Date, each holder of a First Lien Secured Claim and each holder of a Second Lien Secured Claim shall (i) be bound by the terms of the Stalking Horse Senior Secured Credit Facility and, as applicable, any related Loan Documents (as defined in the Stalking Horse Senior Secured Credit Agreement) and the NHL/Lender Cooperation Agreement whether or not each holder of a First Lien Secured Claim and each holder of a Second Lien Secured Claim executes such documents (ii) shall be deemed to have appointed the First Lien Administrative Agent as the administrative agent under the Stalking Horse Senior Secured Credit Facility pursuant to the terms thereof, and (iii) shall be deemed to have authorized the First Lien Administrative Agent to take such actions as administrative agent under the Stalking Horse Senior Secured Credit Facility as are contemplated thereby, including, without limitation, executing and delivering the NHL/Lender Cooperation Agreement and any supplements or amendments thereto and executing and delivering certain post-closing collateral documents specified in the Stalking Horse Senior Secured Credit Facility.

19. _Compliance with Section 1123(a)(6) of the Bankruptcy Code_. The Amended Corporate Organizational Documents of every Debtor and Purchaser that is a corporation comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved. The adoption and filing by the Debtors and the Purchaser of such documents is hereby authorized, ratified, and approved.

RLF1 5595295v. 1

20.     Cancellation of Liens.  Except as provided herein, in the Stalking Horse Senior Secured Credit Facility and in the Prepackaged Plan, and in accordance with the Asset Purchase Agreement, upon the occurrence of the Effective Date, any Lien encumbering the Purchased Assets prior to the Effective Date shall be deemed released, and the holder of the Claim secured by such Lien shall be authorized and directed to release any Collateral or other property of the Debtors constituting Purchased Assets (including any Cash collateral) held by such holder and to take such actions as may be requested by the Post-Effective Date Debtors or the Purchaser (to the extent the Lien encumbers Purchased Assets), to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be reasonably requested by the Post-Effective Date Debtors or the Purchaser (to the extent the Lien encumbers Purchased Assets); *provided, however*, that such Liens shall be released regardless of whether any such filing or recordings are made; *provided, further*, that any valid, perfected prepetition liens against the Debtors' assets shall attach to the assets remaining in the possession of the Post-Effective Date Debtors following the Effective Date and the proceeds thereof with the same force and effect, priority, and validity as existed with respect to the Debtors' assets and proceeds thereof prior to the Effective Date, and the Intercreditor Agreement shall continue to be of full force and effect with respect to such assets.  Following the Effective Date, (i) the First Lien Collateral Agent shall have the right, at its sole discretion at any time prior to dissolution of the Debtors' estates, to accept an in-kind distribution of any non-cash assets remaining in the Debtors' estates and (ii) upon dissolution of the Debtors' estates, the Post-Effective Date Debtors shall distribute any remaining cash in the estates to the First Lien Collateral Agent, in each case to be applied by the First Lien Collateral Agent in accordance with the First Lien Security Agreement.  In addition, if any Person or entity that has filed financing statements, mortgages,

36

mechanic's liens, lis pendens, or other documents evidencing Liens encumbering the Purchased Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens which the Person or entity has with respect to the Purchased Assets, then (a) the Debtors and Post-Effective Date Debtors are authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the Person or entity with respect to the Purchased Assets and (b) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Purchased Assets of any kind or nature whatsoever.

21.     <u>Subordination</u>.  Except as otherwise expressly provided in the Prepackaged Plan, this Order or a separate order of this Court, the classification and manner of satisfying all Claims and Equity Interests under the Prepackaged Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Except as provided in the Prepackaged Plan or in that certain letter agreement by and among the NHL, the First Lien Administrative Agent, the Second Lien Administrative Agent, Hicks Sports Group, LLC, Hicks Sports Group Holdings LLC, the Dallas Stars, Dallas Arena, HSG Partnership Holdings LLC, Texas Rangers Baseball Partners, Emerald Diamond, L.P., Southwest Sports Television, L.P., Southwest Sports Group Baseball, L.P., Dallas Stars U.S. Holdings Corp. and Starcenter LLC, dated December 19, 2006 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "<u>NHL Letter Agreement</u>"), all subordination rights that a holder of a Claim or Equity Interest may have with respect to any distribution to be made

under the Prepackaged Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Except as otherwise provided in the Prepackaged Plan or the NHL Letter Agreement, the distributions under the Prepackaged Plan to the holders of Allowed Claims and Equity Interests will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

22. <u>NHL/Lender Cooperation Agreement</u>. If the Stalking Horse Asset Purchase Agreement is the Asset Purchase Agreement, each holder of a First Lien Secured Claim (and Second Lien Secured Claim, if applicable) that will receive a distribution under the Prepackaged Plan shall, on account of such claim, be bound by the terms of the Stalking Horse Credit Agreement and pursuant to the terms of such agreement and this Order, the NHL/Lender Cooperation Agreement, whether or not such holder of a First Lien Secured Claim (or Second Lien Secured Claim, if applicable) executes the Stalking Horse Credit Agreement.

23. <u>Compromise of Controversies</u>. In consideration for the distributions and other benefits, including releases, provided under the Prepackaged Plan, the provisions of the Prepackaged Plan constitute a good faith compromise and settlement of all Claims, Equity Interests and controversies resolved under the Prepackaged Plan, and the entry of this Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

24. <u>Plan Distributions</u>.

(i) On and after the Effective Date, all distributions under the Prepackaged Plan shall be effectuated in accordance with the Prepackaged Plan, including Articles IV and VII thereof.

(ii) If this Court or any other court of competent jurisdiction orders disgorgement of any distribution made by the First Lien Administrative Agent pursuant to section 7.7(b) of the Prepackaged Plan, then (i) each holder of First Lien Secured Claims shall only be required to disgorge its pro rata share of such payments and the holder of First Lien Secured

Claims shall not be jointly and severally liable for such disgorgement, and (ii) the First Lien Administrative Agent shall not be liable to return any funds which it has distributed to any other holder of First Lien Secured Claims and which are no longer in the First Lien Administrative Agent's possession.

(iii) After the expiration of one year from the Effective Date, all unclaimed property or interests in property distributable under the Prepackaged Plan shall revert automatically to the Purchaser or the Post-Effective Date Debtors, as applicable, and without need for a further Order by the Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Person to such property or interest (including Equity Interest) in such property shall be discharged and forever barred, notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

(iv) The provisions of Article VIII of the Prepackaged Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are approved.

25. Assumption or Rejection of Contracts and Leases.

(i) General. Pursuant to section 9.1 of the Prepackaged Plan, except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Prepackaged Plan, as of the Effective Date, each Debtor shall be deemed to have assumed and assigned to the Purchaser each executory contract and unexpired lease to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (i) was previously assumed or rejected by the Debtor, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date, or (iv) is an Excluded Contract. Such contract and lease assumptions, assumptions and assignments, or rejections are hereby approved under sections 365 and 1123(b) of the Bankruptcy Code as of the Effective Date.

(ii) Excluded Contracts and Rejected Contracts. On the Effective Date, any executory contracts and unexpired leases that (i) is the subject of a motion to reject

filed by the Debtors on or before the Confirmation Date or (ii) is an Excluded Contract shall be deemed rejected by the Debtors.

(iii)     Objections to Rejection, Assumption, or Assumption and Assignment.  Any party wishing to object to the rejection, assumption, or assumption and assignment of any executory contract or unexpired lease under the Prepackaged Plan was required to follow the instructions described in the Summary and Notice for filing objections to the Prepackaged Plan and include a copy of the executory contract or unexpired lease to which any such objection relates or contain information sufficient to identify the executory contract or unexpired lease to which any such objection relates.  Any counterparty that did not timely and properly object to the rejection, assumption, or assumption and assignment of its executory contract or unexpired lease by the Debtors under the Prepackaged Plan, shall be deemed to have consented to such rejection, assumption, or assumption and assignment.

26.     Cure and Adequate Assurance.  The Purchaser has:  (i) to the extent necessary, cured, or provided adequate assurance of cure of, any default with respect to the executory contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code; and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default with respect to the executory contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  The Purchaser's contractual obligation to pay the cure amounts listed in the Cure Schedule (as set forth in the Summary and Notice and as may be amended by stipulations approved by the Court), and Purchaser's contractual obligation to perform under the executory contracts after the closing date constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of

40

the Bankruptcy Code. To the extent that any counterparty to an executory contract did not object to its cure amount by the applicable deadline set forth in the Bidding Procedures and Confirmation Scheduling Order, such counterparty is deemed to have consented to such cure amounts and the assignments of its respective executory contracts to the Purchaser.

27. <u>Rejection Claims</u>. All Claims, if any, arising out of the rejection of executory contracts and unexpired leases by the Debtors shall be classified as Non-Assumed General Unsecured Claims and are not entitled to receive any distributions under the Prepackaged Plan. The Purchaser shall not have any liability or responsibility for any liability of the Debtors arising under or related to the Non-Assumed General Unsecured Claims.

28. <u>Disputed Claims</u>. On and after the Effective Date, except as otherwise provided herein, all Claims shall be paid in the ordinary course of business of the Purchaser if assumed under the Asset Purchase Agreement. If the Debtors, the Purchaser, or any other party in interest disputes any Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced. Notwithstanding section 502(a) of the Bankruptcy Code, and considering the unimpaired treatment of all holders of Assumed General Unsecured Claims under the Prepackaged Plan and that the holders of Non-Assumed General Unsecured Claims are not entitled to any recovery under the Prepackaged Plan, all proofs of claim filed in these Chapter 11 Cases shall be considered objected to and disputed without further action by the Debtors. Upon the Effective Date, all proofs of claim filed against the Debtors, regardless of the time of filing, and including claims filed after the Effective Date, shall be deemed withdrawn. The deemed withdrawal of all proofs of claim is without prejudice to each claimant's rights under section 8.1 of the Prepackaged Plan to assert its Claims

41

against the Purchaser, solely to the extent the Claim was assumed by the Purchaser under the Asset Purchase Agreement, or against the Post-Effective Date Debtors solely to the extent the Claim was not assumed by the Purchaser and is entitled to a distribution hereunder, in any forum as though the Debtors' Chapter 11 Cases had not been commenced. Notwithstanding anything to the contrary herein, the Purchaser or any holder of a Disputed Claim shall be entitled to file a motion in the Bankruptcy Court to determine whether any Claim was assumed by the Purchaser under the Asset Purchase Agreement.

29. <u>Conditions to Effective Date</u>. The Prepackaged Plan shall not become effective unless and until the conditions set forth in section 10.1 of the Prepackaged Plan have been satisfied.

30. <u>Professional Compensation</u>. Except as provided in section 2.1 of the Prepackaged Plan, all entities seeking awards by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is ninety days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred (a "<u>Final Fee Application</u>") and (b) be paid in full, in Cash, in such amounts as are Allowed by the Court in accordance with the order relating to or Allowing any such Administrative Expense Claim. Notice of a hearing (the "<u>Final Fee Hearing</u>") on the Final Fee Applications shall be provided in accordance with the Bankruptcy Rules and Local Rules. The Post-Effective Date Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Court approval. The Asset Purchase Agreement shall provide

that the portion of Specified Expenses that covers compensation for professional services or reimbursement of expenses incurred by professionals for which Bankruptcy Court approval is required shall be provided by Purchaser to the Post-Effective Date Debtors in Cash pursuant to section 2.2 of the Prepackaged Plan. On the Effective Date, the Post-Effective Date Debtors shall set aside such Cash in a separate, interest-bearing escrow account pending final allowance by the Bankruptcy Court of all professional fee applications.

31. <u>Objections to Final Fee Applications</u>. All objections to any Final Fee Applications shall be filed with the Court, together with proof of service thereof, and served upon the applicant and the Notice Parties, so as to be received not later than 4:00 p.m. prevailing Eastern Time on the date that is five Business Days prior to the Final Fee Hearing.

32. <u>Discharge</u>. To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, as of the Effective Date, the confirmation of the Prepackaged Plan shall (i) pursuant to section 11.3 of the Prepackaged Plan and except as otherwise provided in the Prepackaged Plan or herein, discharge and release all Claims against or Equity Interests in the Debtors of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Commencement Date, or against their estates or properties or interests in property, and (ii) except as provided otherwise in the Prepackaged Plan or herein, upon the Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged and released in full in exchange for the consideration provided under the Prepackaged Plan. Except as otherwise provided in the Prepackaged Plan or herein, all Persons shall be precluded from asserting against the Debtors, the Post-Effective Date Debtors, or their respective properties or interests in property, any other Claims based upon any

RLF1 5595295v. 1

act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

33.     No Retained Liabilities.  Neither the Debtors nor the Post-Effective Date Debtors shall retain any liability for any Claims arising from liabilities assumed by the Purchaser pursuant to the Asset Purchase Agreement, and all such Claims against the Debtors shall be discharged and forever barred.

34.     Releases by the Debtors and Stalking Horse.  Except as otherwise specifically provided herein and to the extent permitted by applicable law and approved by the Bankruptcy Court, effective immediately prior to the occurrence of the Effective Date (provided the Effective Date occurs), the releases set forth in section 13.12 of the Stalking Horse Asset Purchase Agreement (or in the Asset Purchase Agreement if the Stalking Horse is not the Purchaser) and in the NHL Owner Consent (as defined in the Stalking Horse Asset Purchase Agreement or in the Asset Purchase Agreement if the Stalking Horse is not the Purchaser) shall be effective and, except for the right to enforce the Prepackaged Plan, (i) the Debtors and (ii) if the Stalking Horse is the Purchaser, the Purchaser and the Owner Support Parties shall be deemed to forever release, waive and discharge the First Lien Released Parties and the Second Lien Released Parties of and from any and all Claims, demands, causes of action and the like, relating to the Debtors and/or their affiliates, advisors, officers, directors and holders of Equity Interests, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise.  Notwithstanding the foregoing, such release, waiver and discharge shall not operate as a release, waiver or discharge

44

of (i) any First Lien Released Party or Second Lien Released Party in respect of any contractual obligations of any such First Lien Released Party or Second Lien Released Party pursuant to the contracts, instruments, releases, and other agreements or documents delivered under or in connection with the Prepackaged Plan or assumed by the Debtors and assigned to the Purchaser pursuant to the Prepackaged Plan or a Final Order of the Bankruptcy Court or (ii) any causes of action unknown to the Debtors, the Purchasers, or the Owner Support Parties, respectively, as of the Commencement Date arising out of willful misconduct or gross negligence of any such First Lien Released Party or Second Lien Released Party as determined by a Final Order of the Bankruptcy Court.

35. <u>Releases by Holders of Claims</u>.

Except as otherwise specifically provided in this Prepackaged Plan and to the extent permitted by applicable law and approved by the Bankruptcy Court, other than the right to enforce the Prepackaged Plan, (a) each First Lien Administrative Party, each holder of a First Lien Secured Claim who opts in to the release contained in Section 11.6 of the Prepackaged Plan, each Second Lien Administrative Party who opts in to the release contained in Section 11.6 of the Prepackaged Plan, and each holder of a Second Lien Secured Claim who opts in to the release contained in Section 11.6 of the Prepackaged Plan shall be deemed to forever release, waive and discharge the First Lien Released Parties, the Second Lien Released Parties, the Debtor Released Parties, the NHL Released Parties, and the Purchaser Released Parties (if the Stalking Horse is the Purchaser), of and from any and all Claims, demands, causes of action and the like, relating to the Debtors or their affiliates, advisors, officers, directors, and holders of Equity Interests, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or

derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or

undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise and (b) the

NHL shall be deemed to forever release, waive and discharge each First Lien Administrative

Party, each holder of a First Lien Secured Claim who opts in to the release contained in Section

11.6 of the Prepackaged Plan, each Second Lien Administrative Party who opts in to the release

contained in Section 11.6 of the Prepackaged Plan, and each holder of a Second Lien Secured

Claim who opts in to the release contained in Section 11.6 of the Prepackaged Plan of and from

any and all Claims, demands, causes of action and the like, relating to the Debtors or their

affiliates, advisors, officers, directors, and holders of Equity Interests, existing as of the Effective

Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or

prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or

contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or

unforeseen, in law, equity or otherwise; *provided, however*, that nothing contained in Section

11.6 of the Prepackaged Plan shall operate as a release, waiver or discharge of the matter of GSP

Finance LLC v. KPMG LLP, Index No. 650841/2011, commenced on March 29, 2011 in the

Supreme Court of the State of New York, New York County, or any claims, causes of action, or

rights in connection therewith.

Notwithstanding the foregoing, (i) such release, waiver and discharge shall not

operate as a release, waiver or discharge of the rights of any First Lien Administrative Party to

receive indemnification or reimbursement pursuant to section 9.6 of the First Lien Credit

Agreement, (ii) such release, waiver and discharge shall not operate as a release, waiver or

discharge of the rights of any First Lien Administrative Party or any other holder of a First Lien

Secured Claim against GSP Finance LLC, any Second Lien Administrative Party or any other

46

holder of a Second Lien Secured Claim arising out of (a) the filing of, pursuit of or recovery (if any) from the matter of GSP Finance LLC v. KPMG LLP, Index No. 650841/2011, commenced on March 29, 2011 in the Supreme Court of the State of New York, New York County or (b) the Intercreditor Agreement, (iii) on an after the Effective Date, the contractual rights and obligations between and among the First Lien Administrative Parties and holders of First Lien Secured Claims under the First Lien Credit Agreement and related loan documents shall survive and continue with respect to any acts, omissions, facts, matters, transactions or occurrences on or after the Effective Date, and (iv) except as set forth in Section 4.3 of the Prepackaged Plan, the Intercreditor Agreement shall remain in full force and effect following the Effective Date and shall not be altered by this Prepackaged Plan. Furthermore, notwithstanding the foregoing, such releases, waivers and discharges shall not operate as a release, waiver or discharge of (i) any First Lien Released Party, any Second Lien Released Party, Debtor Released Party, NHL Released Party or Purchaser Released Party in respect of any contractual obligations of any such party pursuant to the contracts, instruments, releases, and other agreements or documents delivered under or in connection with the Prepackaged Plan, (ii) any counterclaims or crossclaims against any First Lien Released Party or any Second Lien Released Party by any NHL Released Party arising out of or related to an action against any NHL Released Party arising out of or relating to any claim which is released pursuant to this Prepackaged Plan, (iii) any counterclaims or crossclaims against any NHL Released Party by a First Lien Released Party arising out of or related to an action against such First Lien Released Party arising out of or relating to any claim which is released pursuant to this Prepackaged Plan, (iv) any counterclaims or crossclaims against any NHL Released Party by a Second Lien Released Party arising out of or related to an action against such Second Lien Released Party arising out of or relating to any

RLF1 5595295v. 1

claim which is released pursuant to this Prepackaged Plan, or (v) any cause of action by a party granting a release under Section 11.6 of the Prepackaged Plan against a Released Party that is both unknown as of the Commencement Date to the party granting the release under Section 11.6 of the Prepackaged Plan and arises out of or relates to willful misconduct or gross negligence by the Released Party as determined by a Final Order of the Bankruptcy Court.

36. <u>Release and Exculpation Provisions</u>. All release and exculpation provisions embodied in the Prepackaged Plan, including but not limited to those contained in sections 11.4, 11.5, and 11.6 of the Prepackaged Plan, are (i) integral parts of the Prepackaged Plan, (ii) fair, equitable and reasonable, (iii) given for valuable consideration and (iv) are in the best interest of the Debtors and all parties in interest, and such provisions are approved and shall be effective and binding on all persons and entities, to the extent provided herein.

37. <u>Waiver of Avoidance Actions</u>. To the extent not already otherwise waived pursuant to another order of the Bankruptcy Court, effective as of the Effective Date, the Debtors shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtors and/or which the Debtors could have prosecuted as debtors or debtors in possession.

38. <u>Term of Injunctions or Stays</u>. Except as otherwise specifically provided herein, all Persons who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Post-Effective Date Debtor or Released Party, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or

48

order against any Post-Effective Date Debtor or Released Party with respect to any such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against any Post-Effective Date Debtor or Released Party, or against the property or interests in property of any Post-Effective Date Debtor or Released Party, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any Post-Effective Date Debtor or Released Party, or against the property or interests in property of any Post-Effective Date Debtor or Released Party with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to section 11.5 or 11.6 of the Prepackaged Plan; *provided, however,* the First Lien Administrative Agent shall not be enjoined from taking any enforcement action with respect to any Lien against assets that it is entitled to receive under section 11.1 of the Prepackaged Plan. Unless otherwise provided herein, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

39. <u>Provisions to Resolve Objections by Governmental Bodies Relating to Certain Injunctions Provided by the Prepackaged Plan.</u>

(a) **Provision to Resolve Informal Objection by the Texas Comptroller of Public Accounts.** Notwithstanding anything in the Prepackaged Plan to the contrary, a Governmental Body (as defined in the Asset Purchase Agreement) may assert (i) any valid, enforceable setoff rights under applicable law to the extent allowed under section 553 of the Bankruptcy Code and (ii) any valid, enforceable recoupment rights under applicable law upon an order of the Bankruptcy Court or agreement of the parties.

49

(b) **Provision to Resolve Internal Revenue Service Objection.**[3]

Notwithstanding any provision to the contrary in the Prepackaged Plan, the Order confirming the Prepackaged Plan, and any implementing Prepackaged Plan documents, nothing shall: (a) affect the ability of the Internal Revenue Service (the "IRS") to pursue any non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' estates; (b) affect the rights of the IRS to assert valid setoff and recoupment and such rights are expressly preserved; (c) discharge any claim of the IRS described in 11 U.S.C. § 1141(d)(6); or (d) constitute a waiver by the IRS of its right to assert that the Bankruptcy Court lacks jurisdiction over IRS claims and interests or any matter related to such claims and interests. To the extent the IRS Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, the IRS Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. §§ 6621, 6622. IRS administrative expense claims shall be paid in full on the Effective Date, if any, or as soon as any such claims are determined and any IRS administrative expense claims shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.

---

[3] Objection by the Internal Revenue Service to the Joint Prepackaged Plan of Reorganization of Dallas Stars, L.P., et al. Under Chapter 11 of the Bankruptcy Code, filed October 25, 2011 [Docket No. 140].

40.     Provision to Resolve General Electric Capital Corporation Objection.[4]

Nothing in the Prepackaged Plan or this Order shall (i) stay or discharge any claims of General Electric Capital Corporation (or its successors in interest) ("GECC") against the Debtors, (ii) stay or enjoin any claim of GECC against any non-debtor third party, including without limitation, non-debtor affiliates and Zurich American Insurance Company ("Zurich"), or (iii) stay or enjoin any action by GECC against Zurich in respect of policy MLP 9384326-00 or the proceeds of such policy; *provided, however*, that the rights reserved in respect of GECC shall not affect, alter or impair the rights of the holders of First Lien Secured Claims (including GECC in its capacity as a holder of a First Lien Secured Claim) or Second Lien Secured Claims to receive the distributions to which they are entitled under the terms of the Prepackaged Plan; *provided further, however*, GECC shall have no right of action against the Post-Closing Expense Amount, or any portion thereof, and shall not be entitled to receive any portion of the Post-Closing Expense Amount on account of any claim against the Debtors reserved in this paragraph (except to the extent GECC is otherwise entitled to such funds in its capacity as holder of a First Lien Secured Claim pursuant to the Prepackaged Plan).

41.     Indemnification Obligations of the Debtors and Stalking Horse.  Except to the extent assumed by the Purchaser under the Asset Purchase Agreement or pursuant to an assumed contract or as set forth in section 12.2 of the Asset Purchase Agreement, all contribution or indemnification obligations shall be rejected by the Debtors and classified as Non-Assumed General Unsecured Claims.  For the avoidance of doubt and in order to clarify but not to limit any contractual indemnification obligation of the Stalking Horse under the Stalking Horse Senior Secured Credit Agreement and related loan documents, the Purchaser shall not indemnify the

---

[4] Objection of General Electric Capital Corporation to Joint Prepackaged Plan of Reorganization of Dallas Stars, L.P., *et al.* Under Chapter 11 of the Bankruptcy Code, filed October 24, 2011 [Docket No. 141].

holders of First Lien Secured Claims, the holders of Second Lien Secured Claims, the First Lien

Administrative Parties, or the Second Lien Administrative Parties, or pay for or reimburse losses,

claims, damages, liabilities or related expenses of such parties to the extent arising in connection

with or under or pursuant to (1) the First Lien Credit Agreement or any agreements entered into

pursuant thereto, (2) the Second Lien Credit Agreement or any agreements entered into pursuant

thereto, (3) any agreement with any Hicks Affiliate or any Intercompany Claim, or (4) any

matter arising in connection with or under or pursuant to events occurring prior to the Closing

Date related to any of the matters referred to in clauses (1) through (4) immediately herein

above.

42.     Payment of Statutory Fees.  All fees payable under section 1930, chapter

123, title 28, United States Code shall be paid by a Debtor until such Debtor's chapter 11 case is

closed.

43.     Compliance with Tax Requirements.  In connection with the Prepackaged

Plan and all distributions thereunder, any party issuing any instruments or making any

distribution under the Prepackaged Plan, including any party described in section 7.3 thereof,

shall, to the extent applicable as determined in its sole discretion, comply with all tax

withholding and reporting requirements imposed by any federal, state, local, or foreign taxing

authority, and all distributions under the Prepackaged Plan shall be subject to any such

withholding and reporting requirements.  Each such party shall be authorized to take all actions

necessary or appropriate to comply with such withholding and reporting requirements.  All

persons holding Claims shall be required to provide completed Forms W-8, W-9 and/or any

other forms or information necessary to effect information reporting and the withholding of such

taxes, as determined by the applicable party issuing any instruments or making any distribution

under the Prepackaged Plan. Notwithstanding any other provisions of the Prepackaged Plan to the contrary, with respect to any Allowed Claim the payment of which is subject to any withholding tax (i) each holder of such an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distributions, and (ii) no distribution shall be made to or on behalf of such holder pursuant to the Prepackaged Plan unless and until such holder has made arrangements satisfactory to the applicable party issuing any instruments or making any distribution under the Prepackaged Plan for the payment and satisfaction of such tax obligations. Any Cash, Senior Promissory Notes, documents, and/or other consideration or property to be distributed pursuant to the Prepackaged Plan shall, pending the receipt of such forms and/or implementation of such arrangements, be treated as an unclaimed distribution pursuant to section 7.7(a) therein. Any party issuing any instruments or making any distribution under the Prepackaged Plan has the right, but not the obligation, to not make a distribution until such holder has provided the necessary tax forms or information and/or made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

44. <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or other securities under or in connection with the Prepackaged Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Prepackaged Plan, including the Asset Purchase Agreement and any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any

of the transactions contemplated under the Prepackaged Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

45. <u>Dissolution of Post-Effective Date Debtors</u>. Upon (i) the adjudication by the Bankruptcy Court of all applications by professionals for final allowances of compensation for services and reimbursement of expenses and the issuance of a Final Order for each application and the payment of all amounts payable thereunder and (ii) the completion of all other matters necessary to occur in the Chapter 11 Cases, the Post-Effective Date Debtors shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules. Upon the closing of the Chapter 11 Cases and the completion of all matters required to be performed by the Post-Effective Date Debtors under the Prepackaged Plan, the Asset Purchase Agreement, and applicable law other than dissolution, the Post-Effective Date Debtors shall be dissolved or otherwise consolidated without the need for further action (*i.e.*, without the need to file a certificate of dissolution or merger with or take any other action with respect to or receive any approval or any governmental authority that would ordinarily be required under applicable law to dissolve or implement the termination of the legal existence of, or consolidate, the Post-Effective Date Debtors); provided, however, that the Post-Effective Date Debtors shall be required to provide notice to the Bankruptcy Court of Dissolution. In the event the Post-Effective Date Debtors remain in possession of any Cash immediately prior to Dissolution, except as otherwise provided in section 2.2 of the Prepackaged Plan, such Cash shall be distributed to the First Lien Collateral Agent pursuant to sections 6.3 and 11.1 of the Prepackaged Plan.

46. <u>Change of Name</u>. Notwithstanding anything contained in their respective organizational documents or applicable state law to the contrary, each of the Debtors is

54

authorized, within five Business Days after the Effective Date, to change its respective name to a name that does not include "Dallas Stars" or "StarCenter" or any confusingly similar variations thereof and any amendment to the organizational documents (including the certificate of organization or certificate of incorporation) to effect such a change is authorized and approved, without partner, member, board, or shareholder approval. Upon any such change with respect to the Debtors, the Debtors shall file with the Court a notice of change of case caption within ten Business Days of the Effective Date, and the change of case caption for these Chapter 11 Cases shall be deemed effective as of the Effective Date.

47. <u>Documents, Mortgages, and Instruments</u>. Each and every federal, state, commonwealth, local, or foreign governmental agency, department, or office is hereby authorized and directed to accept this Order and any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Prepackaged Plan and this Order. This Order shall likewise be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities that may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

48. <u>Reversal/Stay/Modification/Vacatur of Order</u>. Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation,

RLF1 5595295v. 1

indebtedness, liability, priority, or lien incurred or undertaken by the Debtors, Purchasers, or the Post-Effective Date Debtors as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Prepackaged Plan or any amendments or modifications thereto. In accordance with section 1144 of the Bankruptcy Code, any reversal, stay, modification, or vacatur of this Order shall contain such provisions as are necessary to protect the Purchaser as the Purchaser acquired all rights in the Purchased Assets in good faith reliance on this Order.

49. <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Prepackaged Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XII of the Prepackaged Plan. For the avoidance of doubt, the Bankruptcy Court shall not retain jurisdiction to hear and determine disputes arising under or in connection with the Stalking Horse Senior Secured Credit Agreement and the NHL Agreements.

50. <u>Modifications</u>. Without need for further order or authorization of the Court, the Debtors, subject to the approval of the NHL, or the Post-Effective Date Debtors are authorized and empowered to make any and all modifications to the Prepackaged Plan, any and all documents included as part of the Prepackaged Plan Supplement, the Asset Purchase Agreement, and any other document that is necessary to effectuate the Prepackaged Plan;

RLF1 5595295v. 1

*provided* there shall be no Lender Adverse Modification without the consent of the First Lien Administrative Agent acting in its reasonable discretion. Subject to section 1127 of the Bankruptcy Code, holders of Claims that have accepted the Prepackaged Plan shall be deemed to have accepted the Prepackaged Plan, as altered, amended, or modified, without further solicitation or notice and hearing being required pursuant to Bankruptcy Rule 3019; *provided* there has been no Lender Adverse Modification without the consent of the First Lien Administrative Agent acting in its reasonable discretion.

51. <u>Provisions of Prepackaged Plan and Order Nonseverable and Mutually Dependent</u>. The provisions of the Prepackaged Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

52. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent the Stalking Horse Senior Secured Credit Agreement or any exhibit to the Prepackaged Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Prepackaged Plan or the Prepackaged Plan Supplement shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without giving effect to the principles of conflict of laws.

53. <u>Applicable Nonbankruptcy Law</u>. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Prepackaged Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

54. <u>Waiver of Filings</u>. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with

the Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

55. <u>Governmental Approvals Not Required</u>. This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Prepackaged Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Prepackaged Plan and the Disclosure Statement.

56. <u>Notice of Order</u>. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Order, substantially in the form annexed hereto as <u>Exhibit B</u>, to all parties who hold a Claim or Equity Interest in these cases and the U.S. Trustee. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

57. <u>Substantial Consummation</u>. On the Effective Date, the Prepackaged Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

58. <u>Waiver of Stay</u>. The stay of this Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for fourteen days or otherwise, is hereby waived, and this Order shall be effective and enforceable immediately upon its entry by the Court.

59. <u>Inconsistency</u>. To the extent of any inconsistency between this Order and the Prepackaged Plan, this Order shall govern.

58

60.     No Waiver.  The failure to specifically include any particular provision of
the Prepackaged Plan in this Order will not diminish the effectiveness of such provision nor
constitute a waiver thereof, it being the intent of this Court that the Prepackaged Plan is
confirmed in its entirety and incorporated herein by this reference.

Dated:  November 18, 2011
        Wilmington, Delaware

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

RLF1 5595295v. 1