THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DS Liquidation L.P., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 11-12935-PJW<br><br>Jointly Administered |

**DSE HOCKEY CLUB, L.P.'S MOTION TO REOPEN CASE**

DSE Hockey Club, L.P. ("DSE Hockey Club"), a purchaser of the Debtors' assets and a party-in-interest in the above-referenced jointly administered bankruptcy cases (the "Bankruptcy Cases"), files this *Motion to Reopen Case* (the "Motion"), and respectfully states the following:

**I.    Summary of Relief Requested**[2]

In 2011, DSE Hockey Club (along with related parties) purchased substantially all of the Debtors' assets during the Bankruptcy Cases pursuant to this Court's Confirmation Order and the related Plan. A few weeks ago (on October 28, 2025), Dallas Sports Group, LLC and Radical Arena, Ltd (collectively, the "Mavericks")[3] sued DSE Hockey Club over the Debtors' alleged relocation to Frisco, Texas in **2003** (22 years ago), alleging that such relocation (i) was a default under contracts that were assumed and assigned to DSE Hockey Club pursuant to the

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: DS Liquidation, L.P. f/k/a Dallas Stars, L.P. (9450); Dallas Arena, LLC (9999); DS U.S. Liquidation Corp. f/k/a Dallas Stars US Holdings Corp. (0458); and SC Liquidation, LLC f/k/a Stars Centers, LLC (4430) (collectively, the "Debtors").

[2] Capitalized terms not defined in the Summary of Relief Requested section of this Motion shall have the same meaning as defined in other sections of this Motion.

[3] The Mavericks are the companies that currently and, since December 2023, own and operate the NBA franchise known as the Dallas Mavericks. Because the franchise was owned by three different majority ownership groups during the relevant time and the Mavericks are the successor to the two owners before them, references to the Dallas Mavericks in this Motion are to the franchise, and not any specific ownership group.

Confirmation Order; and (ii) created forfeiture rights in assets that DSE Hockey Club purchased free and clear 14 years ago. The suit completely ignores that creditors (like the Mavericks) were enjoined by the Confirmation Order and the Plan from pursuing these claims. Likewise, the Confirmation Order is res judicata as to any defaults that could have been raised (but were not) when the contracts were assumed and assigned, and the Confirmation Order sold DSE Hockey Club the assets free and clear of the Mavericks' alleged forfeiture rights. Thus, obvious and sufficient "cause" exists to reopen the Bankruptcy Cases to enforce the Confirmation Order and the Plan against the Mavericks.

## II.  Jurisdiction and Venue

1.  The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.

2.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Under Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), DSE Hockey Club consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.  Venue of these Bankruptcy Cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.  The statutory basis for the relief requested in this Motion is Section 350(b) of the Bankruptcy Code. The rules governing this Motion include Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 5010 and Local Rule 5010-1.

### III.     Factual and Procedural Background

A. **The Debtors Enter the Franchise Agreement and COC Agreements, and Move to Frisco.**

5.     On July 28, 1998, Dallas Stars, L.P. (the "Stars"), one of the Debtors, and the City of Dallas entered into the Stars Franchise Agreement (the "Franchise Agreement"). At that time, the Stars owned and operated the NHL franchise known as the Dallas Stars.

6.     On September 30, 1999, Arena/Dallas Stars, Inc. ("Arena"), one of the Debtors, entered into the Agreement of Limited Partnership of Center Operating Company, L.P. (the "LP Agreement"). Also on September 30, 1999, Arena entered into the Limited Liability Company Agreement of Center GP LLC (the "LLC Agreement" and together with the LP Agreement, the "COC Agreements"). In general, the COC Agreements govern the control over the American Airlines Center, the arena at which both the Dallas Stars and the Dallas Mavericks play their home games, including tens of millions of dollars a year in revenue generated by that arena.

7.     In 2003, the Stars moved their corporate and executive offices and team practice facility to 2601 Avenue of the Stars, Frisco, Texas.[4] The Dallas Mavericks were well aware of this move, as their own NBA developmental league affiliate (the Texas Legends) has played its home games at the Stars' facility at 2601 Avenue of the Stars, Frisco, Texas since 2009.[5]

B. **The Debtors File Bankruptcy and Sell Their Assets to the Purchaser.**

8.     Eight years after the move to Frisco, on September 15, 2011, the Stars filed a voluntary petition for relief under chapter 11 in this Court [Dkt # 1; case no. 11-12935]. On the

---

[4] This location in Frisco is about 10 miles north of the Dallas city limits.

[5] This arena is now called the Comerica Center. *See* Comerica Center, *Texas Legends*, https://www.comericacenter.com/events/texas-legends (last visited Nov. 17, 2025); Comerica Center, *Arena Information*, https://www.comericacenter.com/arena-information (last visited Nov. 17, 2025)

petition the Stars' disclosed their address as 2601 Avenue of the Stars, Frisco, 75034, Collin County, Texas.

9.      Also, on September 15, 2011, affiliated debtor Arena (then known as Dallas Arena, LLC) filed a voluntary petition for relief under chapter 11 in this Court [Dkt # 1; case no. 11-12965].

10.     On September 22, 2011, this Court entered its order approving bidding procedures for the sale of the assets of the Stars, Arena and the other Debtor entities and approving the purchase agreement (the "APA") with Dallas Sports & Entertainment, L.P. and DSE Hockey Club (among others) (collectively, "the Purchaser") as the stalking horse APA (the "Sale Procedures Order") [Dkt # 83; case no. 11-12935]. The Sale Procedures Order also approved the form and sufficiency of a summary notice (the "Summary Notice").

11.     On September 22, 2011, the Debtors filed the Summary Notice [Dkt # 84; case no. 11-12935]. Relevant provisions of the Summary Notice are copied below (emphasis added):

> 12. Pursuant to section 9.1 of the Prepackaged Plan, as of the Effective Date, the **Debtors shall assume and assign to the Purchaser, pursuant to sections 365(a) and (f) of the Bankruptcy Code, each executory contract and unexpired lease to which it is a party other than the Excluded Contracts**. [6] Excluded Contracts generally include (i) the Asset Purchase Agreement and all documents related thereto, (ii) all contracts between the Debtors and any broker or investment banker related to the Asset Purchase Agreement, other than GSP Securities LLC, (iii) except as set forth on Schedule 1.1(a)(i) of the Asset Purchase Agreement, all contracts between the Debtors and any Affiliate of the Debtors or any other Hicks Affiliate (other than contracts to which the only parties that are Affiliates of the Debtors or any other Hicks Affiliate consist of (A) any Debtor and any other Debtor or (B) any Debtor and any Transferred Subsidiary), (iv) the contracts listed on Schedule 1.1(a)(ii) of the Asset Purchase Agreement, and (v) the First Lien Credit Agreement and Second Lien Credit Agreement, and all contracts related thereto. **Unless an executory contract or unexpired lease is an Excluded Contract, it will be assumed and assigned to the Purchaser pursuant to section 365 of the Bankruptcy Code and the Asset Purchase Agreement**. . . .

---

[6] The Franchise Agreement and COC Agreements are clearly not Excluded Contracts, and the COC Agreements are specifically referenced as a purchased asset in the APA (defined as COC Equity Interests).

---

13. Because the Debtors received authority from the Bankruptcy Court to pay the prepetition claims of certain trade and other unsecured creditors consistent with the terms of such obligations existing on the Commencement Date, or with past practice, **the Debtors do not believe they will owe any monetary amounts under any executory contract or unexpired lease to be assumed and assigned to the Purchaser under section 365(b)(1) of the Bankruptcy Code ("Cure Amount").**

14. **Any party wishing to object to such assumption or assumption and assignment, or to assert that a Cure Amount is owed must follow the instructions described herein for filing objections to the Prepackaged Plan** and, with any objection, include a copy of the executory contract or unexpired lease to which any such objection relates or contain information sufficient to identify the executory contract or unexpired lease to which any such objection relates. **Any counterparty that does not object to the assumption or assumption and assignment of its executory contract or unexpired lease by the Debtors under the Prepackaged Plan, shall be deemed to have consented to such assumption or assumption and assignment. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the executory contract or unexpired lease assumption or assumption and assignment as of the Effective Date and, for all assumed contracts and leases, shall constitute an adjudication of the accuracy of the Debtors' proposed Cure Amounts**. A failure to contest such accuracy through an objection to confirmation of the Prepackaged Plan will waive a counterparty's right to any other or additional Cure Amount, including the payment of any unpaid claims on the contract or lease.

16. Objections, if any, to the adequacy of the Disclosure Statement, approval of the Prepetition Solicitation Procedures, **the Sale of the Purchased Assets, the Assumption and Assignment of Certain Executory Contracts, or the confirmation of the Prepackaged Plan must**: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); (c) **be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 North Market Street, Wilmington, Delaware 19801, on or before on or before 4:00 p.m. (Eastern Time) on October 25, 2011 (the "Objection Deadline");** . . . . UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE BIDDING PROCEDURES MOTION WITHOUT FURTHER HEARING AND NOTICE.

12. On October 3, 2011, the Debtors filed an Affidavit of Service [Dkt # 101; case no. 11-12935] stating that, on September 27, 2011, the Summary Notice was served on (i) the City of Dallas (p. 8); (ii) the Dallas Mavericks (p. 125); Texas D League Management, LLC (p. 26 and 417)[7]; (iv) three different attorneys at Jackson Walker, LLP, the Mavericks' counsel (p. 200 & 201)[8]; and (v) Center Operating Company, L.P. (p. 8 & 95).

13. On October 6, 2011, the Debtors also filed their Affidavit of Publication [Dkt # 105; Case No. 11-12935] stating that the Summary Notice was published in the September 27, 2011 editions of The Wall Street Journal (National Edition) and The Dallas Morning News.

14. On October 17, 2011, the Stars filed their Statement of Financial Affairs [Dkt # 124; Case No. 11-12935] showing in multiple places the Stars' address as 2601 Avenue of the Stars, Frisco, Texas, including the address of all executive officers of the Stars and the location of the Stars' books and records and inventory.

15. At no point did the City of Dallas, the Dallas Mavericks, Center Operating Company, L.P. or any person or entity affiliated with them file an objection to the assumption of any contract or lease (including cure amount), the sale to the Purchaser, the Plan or any other pleading filed in this bankruptcy case, including raising any issue with the Stars' location at 2601 Avenue of the Stars, Frisco, Texas. In fact, at this time the Dallas Mavericks' own development league team Texas Legends, which was owned by Donnie Nelson (then the Dallas Mavericks' General Manager and President), was playing its home games at the Stars' facility at 2601

---

[7] As addressed below, this is the entity that owned the Texas Legends, the Dallas Mavericks' developmental team.

[8] Jackson Walker is the firm of record for the Dallas Mavericks in the Mavericks' Lawsuit (defined below). It is unclear who Jackson Walker represented in the bankruptcy case, but it is significant that they were aware of the Stars' prior bankruptcy case and what occurred in it. Jackson Walker is a large law firm with a highly sophisticated practice, including bankruptcy practice. The firm has represented numerous debtors in bankruptcy mega-cases in the Southern District of Texas, and clearly understands the importance and effect of a confirmed plan and a confirmation order. See e.g. *In re J.C. Penney Direct Mktg. Servs., LLC* (20-20184); *In re Neiman Marcus Grp. LTD LLC, et al.* (20-32519); *In re Stage Stores, Inc., et al.* (20-32564); *In re Chesapeake Energy Corp., et al.* (20-33233); *In re Chesapeake Expl., LLC, et al.* (20-33239); *In re McDermott Int'l Inc., et al.* (20-30336).

Avenue of the Stars, Frisco, Texas **under a sub-lease with the Stars**.[9]  Thus, it seems extremely unlikely that, during the bankruptcy case in late 2011, the Dallas Mavericks did not know 2601 Avenue of the Stars, Frisco, Texas was the Stars' location or that they would raise an objection to such location considering their own ongoing use of that facility through the sublease.[10]

16.     On November 18, 2011, this Court entered the Confirmation Order.  Among other things, the Confirmation Order confirmed the Plan, ordered the assumption and assignment of contracts and leases to the Purchaser and approved the sale of the Debtors' assets to the Purchaser.  Section 13 of the Confirmation Order also contained the following very broad free and clear sale language: "[T]he transfer of the Purchased Assets to the Purchaser under the Asset Purchase Agreement…shall vest the Purchaser with all right, title and interest of the Debtors to the Purchased Assets free and clear of all Liens, claims (as defined in section 101(5) of the Bankruptcy Code, and including, without limitation, successor liability claims), encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, or interests of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding,

---

[9] The Texas Legends' use and sublease of the Stars' Frisco facility was disclosed on pages 1 and 12 of the Disclosure Statement (Dkt # 15, Case No. 11-12935].  In 2011, the Comerica Center was called the Dr. Pepper Arena. *See* Press Release, Texas Hockey Stars, *Comerica Bank Announce Naming Rights Agreement for Comerica Center* (Jan. 18, 2019), https://www.nhl.com/stars/news/dallas-stars-comerica-bank-announce-naming-rights-agreement-for-comeri-303996194  (last visited Nov. 17, 2025).  As noted above, the Texas Legends received the Summary Notice and, thus, were aware of the Stars' bankruptcy case.

[10] Interestingly, Donnie Nelson's tenure with the Dallas Mavericks ended in messy litigation, including over the Texas Legends. *See* WFAA Staff, WFFA, *Ex-GM Donnie Nelson Sues Dallas Mavericks, Claims One of Mark Cuban's Executives Sexually Assaulted his Nephew,*  (March 18, 2022), https://www.wfaa.com/article/news/local/ex-gm-donnie-nelson-sues-mavericks-claims-one-of-cubans-executives-sexually-assaulted-nephew-team-denies-allegation/287-bd1b9dfb-9cc1-4cee-af4e-b001cd7580a0  (last visited Nov. 17, 2025).

---

law, equity or otherwise (collectively, the "Released Liens"), including, but not limited to, (i) **those that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Purchased Assets, or any similar rights** . . . The transfer, assumption and assignment, of any of the executory contracts, shall be free and clear of all Released Liens." (emphasis added)

17. Section 38 of the Confirmation Order also contains a broad plan injunction. This section provides "[A]ll Persons who have held, hold, or may hold Claims against or Equity Interest in any Debtor are permanently enjoined, from and after the Effective Date (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Post-Effective Date Debtor or Released Party, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against any Post-Effective Date Debtor or Released Party with respect to any such Claim or Equity Interest …." Section 11.8 of the Plan has identical language.[11]

18. On November 18, 2011, the sale to the Purchaser closed and the Effective Date of the Plan occurred [Dkt # 182; Case No. 11-12935]. Pursuant to the Confirmation Order, the Plan and related documents, the Purchaser acquired substantially all of the Stars' and Arena's assets, including the Franchise Agreement and the COC Agreements.

19. For the last 14 years, the Purchaser has operated the Dallas Stars NHL franchise representing the city of Dallas and playing its home games at the American Airlines Center located in the heart of Dallas alongside the Dallas Mavericks NBA franchise. During the Purchaser's very successful ownership after the 2011 bankruptcy sale (with a primary assist from

---

[11] The proposed confirmation order filed when the Bankruptcy Cases were filed on September 15, 2011 [Dkt # 15-3; Case No. 11-12935] contained identical free and clear sale language in paragraph 13 and plan injunction language in paragraph 38 as the Confirmation Order that was ultimately entered two months later. Thus, the Dallas Mavericks were on notice during the entirety of the Bankruptcy Cases that this relief was being sought, but took no action.

this Court), the Dallas Stars qualified for the Stanley Cup playoffs seven times, earning one trip to the Stanley Cup Finals, three trips to the Western Conference Finals and one Art Ross Trophy winner (the Stars' longtime captain, Jamie Benn). Jim Nill, the Dallas Stars general manager, won NHL general manager of the year three consecutive times (2023, 2024 and 2025). Most recently, beloved Dallas Stars announcer Daryl "Razor" Reaugh was inducted into the Hockey Hall of Fame.

      C.    **The Mavericks Sue the Purchaser Based on the Debtors' Pre-Bankruptcy Move to Frisco.**

20. On October 28, 2025, the Mavericks sued DSE Hockey Club (a Purchaser) by filing their Original Petition and Application for Injunctive Relief (the "Mavericks' Lawsuit") in the First Business Court Division of the Texas Business Courts. The Mavericks' Lawsuit is attached as **Exhibit 1**.

21. The Mavericks' Lawsuit alleges "In clear violation of their Franchise Agreement with the City and [the COC Agreements] with the Mavericks, the Stars moved their principal corporate and executive offices and the team's practice facilities to 2601 Avenue of the Stars, Frisco, Texas." [¶ 43]. "There is no doubt the Stars' move was, in fact, a breach . . ." ¶ 45. The Mavericks' Lawsuit likewise alleges "The Stars' move to Frisco constituted a 'Relocation Event' under the [COC Agreements], formally rendering the Stars a 'Relocation Partner' and the Mavericks, in turn, a 'Remaining Partner'" the effect of which is the Stars allegedly forfeiting all rights under the COC Agreements for the nominal sum of $110. ¶ 47.

22. As noted above, the Stars moved to Frisco in 2003 – 8 years before the Stars' and Arena's bankruptcy cases were filed and the Purchaser acquired the Stars' and Arena's assets in that bankruptcy, and 22 years before the Mavericks' Lawsuit.

IV.     **Argument and Authorities**

23.     Section 350(b) of the Bankruptcy Code authorizes this Court to reopen these Bankruptcy cases "to administer assets, to accord relief to the debtor, or for other cause." Bankruptcy Rule 5010 allows DSE Hockey Club, as a party-in-interest (as a Purchaser),[12] to request that the Debtors' bankruptcy cases be reopened. "Cause" is not defined in the Bankruptcy Code for the purposes of reopening a case, but "bankruptcy courts have broad discretion to reopen cases after an estate has been administered." *Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak)*, 406 F.3d 214, 223 (3d Cir. 2005).

24.     While the Third Circuit has not developed an exhaustive list of factors that constitute cause to reopen a bankruptcy, it has recently described a list of "several relevant factors, including whether the motion raises issues determined in a bankruptcy court's prior order, whether reopening would generate additional assets for the debtor's estate, and whether non-bankruptcy courts are available and better-suited to adjudicate the dispute." *In re Congoleum Corp.*, 149 F.4th 318, 329 (3d Cir. 2025).

25.     The Third Circuit has repeatedly held that "cause to reopen a bankruptcy case can exist where, as here, the bankruptcy court is asked to interpret and enforce a provision in a confirmation order" or other previously issued order. *In re Congoleum Corp.*, 149 F.4th 318, 330 (3d Cir. 2025); *see also In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 423 (3d Cir. 2013); *Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak)*, 406 F.3d 214, 224 (3d Cir. 2005); *LandSource Cmtys. Dev. LLC v. Citizens Against Corp. Crime, LLC*, 834 F. App'x. 747, 751 (3d Cir. 2020).

---

[12] As a purchaser of the Debtors' assets under the Confirmation Order, DSE Hockey Club is a party-in-interest. *See Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 278 (2024) (interpreting "party in interest" very broadly). Furthermore, as the Confirmation Order is the mechanism by which DSE Hockey Club acquired the Debtors' assets, the interpretation of that Confirmation Order is at the heart of this matter. Because it directly and pecuniarily affects DSE Hockey Club, as demonstrated by the Mavericks' Lawsuit. *Id.*

26. DSE Hockey Club, a purchaser of substantially all of the Debtors' assets, seeks to reopen these Bankruptcy Cases so that this Court can interpret (if necessary) and enforce its Confirmation Order and the related Plan. The claims asserted by the Mavericks in the Mavericks' Lawsuit are barred by res judicata based on entry of the Confirmation Order and violate the free and clear and plan injunction provisions of the Confirmation Order and the Plan. This is squarely within what the Third Circuit has recently and clearly held constitutes "cause" under Section 350(b). The Court, therefore, should grant the Motion and take any other action necessary to administer the estate assets and the Bankruptcy Cases.

27. Notably, the Plan and Confirmation Order themselves state that this Court retains "exclusive" jurisdiction over the Plan and Confirmation Order.[13] Further, as this Court has recognized, the court that issues an injunction has sole authority to enforce it. *In re SelectBuild III, LLC*, Case No. 09-12085, 2015 Bankr. LEXIS 1790, at *18 (Bankr. D. Del. May 28, 2015); *see also Mesabi Metallics Co. LLC v. B. Riley FBR, Inc. (In re Essar Steel Minn. LLC)*, 19-397, 2019 U.S. Dist. LEXIS 93104, at *12 (D. Del. June 4, 2019) (collecting cases for the proposition that the court issuing an injunction has exclusive jurisdiction to enforce it, and granting stay pending appeal based on that argument). Thus, issues regarding the Mavericks' blatant violation of this Court's Confirmation Order need to be raised with this Court in the first instance, and "non-bankruptcy courts" may not be available at all to adjudicate this dispute. *Congoleum,* 149 F.3d at 329.

---

[13] Article XII of the Plan and ¶ 49 of the Confirmation Order specify that the Court retains **exclusive** jurisdiction over all matters arising out of, or relating to, the bankruptcy cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including (i) jurisdiction to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the APA, the Plan or the Confirmation Order, and (ii) to issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan.

28. Attached hereto as **Exhibit 2** is DSE Hockey Club's proposed Motion to Enforce Plan and Confirmation Order, which DSE Hockey Club intends to file and prosecute (the "Motion to Enforce") upon reopening of the Bankruptcy Cases.

WHEREFORE, DSE Hockey Club respectfully requests that the Court reopen the Debtors' Bankruptcy Cases authorize DSE Hockey Club to file the Motion to Enforce and enter a scheduling order setting discovery deadlines and an evidentiary hearing thereon. DSE Hockey Club also requests such other relief to which it may be entitled.

Dated: November 18, 2025
Wilmington, Delaware

BLANK ROME LLP

By: */s/ Stanley B. Tarr*
Stanley B. Tarr (No. 5535)
Lawrence R. Thomas III (No. 6935)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Email: stanley.tarr@blankrome.com
          lorenzo.thomas@blankrome.com

John E. Lucian (*pro hac vice forthcoming*)
One Logan Square
130 N. 18th Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-5500
Email: john.lucian@blankrome.com

-and-

WINSTEAD PC
Joshua M. Sandler (*pro hac vice forthcoming*)
Phillip Lamberson (*pro hac vice forthcoming*)
Cory C. Johnson (*pro hac vice forthcoming*)
Frank O. Carroll III (*pro hac vice forthcoming*)
Annmarie Chiarello (*pro hac vice forthcoming*)
Ben Hamel (*pro hac vice forthcoming*)
John David Janicek (*pro hac vice forthcoming*)
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201

Telephone: (214) 745-5400
Email: jsandler@winstead.com
Email: plamberson@winstead.com
Email: cjohnson@winstead.com
Email: achiarello@winstead.com
Email: focarroll@winstead.com
Email: bhamel@winstead.com
Email: jjanicek@winstead.com

**COUNSEL FOR DSE HOCKEY CLUB, L.P.**